## STAPLES v. MAY.*

### No. 12,167; March 31, 1890.

23 Pac. 710.

**Mortgage Foreclosure—Receiver.**—Where a Mining Company operates its various mines under one system, and the proceeds of the ore extracted from each are used indiscriminately, for the common benefit of all, a receiver appointed on the foreclosure of mortgages covering a part only of the company's property, with power to take

*For subsequent opinion in bank, see 87 Cal. 178, 25 Pac. 346.

possession of the mortgaged premises and to carry on the mines, who is permitted by the company to take possession of its entire property, and to work all its mines, rendering them more valuable and more capable of paying creditors, cannot be considered a trespasser, and is not personally liable to a general creditor of the company for sums realized by him from a mine not covered by the mortgage.

Mortgage—Description—Mines and Mineral Lands.—A mortgage of specifically described land, together with all the lands, mines, and minerals of every kind belonging to the mortgagor in a designated county, covers all mineral lands in that county shown by proper evidence dehors the mortgage to have belonged to the mortgagor at the time of its execution.

APPEAL from Superior Court, Santa Clara County; D. S. Belden, Judge.

T. I. Bergin for appellant; S. F. Leib for respondent.

FOOTE, C.—This appeal is taken from a judgment in favor of the plaintiff, and from an order denying the defendant a new trial. From the record, it appears that Henry May was appointed the receiver of the property belonging to the Santa Clara Mining Association of Baltimore, whose lands and property were in the county of Santa Clara in this state; that the lands owned or possessed by this association contained mines of quicksilver; that the association was without means to work the mines, by which alone its then numerous debts could be paid; and that, to that end, May was authorized by the court which appointed him to borrow money, and use and expend it in working the mines, etc. He was originally appointed receiver in an action brought by the executors of the estate of W. S. O'Brien, deceased, to foreclose a mortgage on certain specific lands of the Santa Clara Association, and to foreclose a pledge of certain bonds secured by another and second mortgage or deed in trust. Afterward, when the beneficiaries under the deed in trust, who were made parties to the action originally, intervened and filed a cross-complaint seeking to foreclose their second mortgage or deed in trust, he was appointed receiver of all the property contained in both instruments, to carry on the quicksilver mines, borrow money, etc. There were other unsecured creditors, among whom was the plaintiff, Mary E. Staples, who could not get any satisfaction for their debts out of their debtor, the Santa

Clara Mining Association, by reason of its insolvency, and the existence of the instruments above mentioned. But she brought suit against the association, obtained her judgment, and, by proceedings supplementary to the execution issued on her judgment under section 720, Code of Civil Procedure, sought the aid of the superior court to force May, the receiver, to pay her what she claimed was due her debtor, the mining association, from May, as a trespasser, in realizing money from a mine of the Santa Clara Mining Association which was not included in either of the mortgages for which foreclosure had been prayed, and in which action May was, as before stated, appointed receiver. The court below held that May, as receiver, had gone upon the property of the Santa Clara Mining Association which was not included in either mortgage; that he was not authorized to do so as receiver under the appointment of the superior court; that he did so as a trespasser; and that the net profits which he had realized out of the working of the quicksilver mine upon which he had trespassed amounted to the sum of $38,212, for which and interest he became liable to pay to the Santa Clara Mining Association of Baltimore, the mortgagor in the two mortgages, amounting in the aggregate to the sum of $46,414.84; and, being liable to that corporation, the plaintiff "is entitled to judgment against defendant for such proportion of the sum of $46,414.84, as the amount of her said judgment and interest thereon to date, to wit, $6,593.19, bears to the said sum of $55,470.70, to wit, for the sum of $5,515, and costs of suit."

The theory of the case on which the court seems to have made its findings and decision, and upon which it refused the motion for a new trial, is that the court never had any jurisdiction over the particular part of the Guadeloupe mine, the mining property of the Santa Clara Mining Association, from whence the quicksilver sold by the defendant was taken; that the receiver never had any authority to enter upon it; and that whatever sum of money resulted over and above the expenses of mining the quicksilver was an indebtedness of May, as a trespasser, to the Santa Clara Mining Association, for which he was individually responsible to them, and which, being an indebtedness accruing to them, was the subject of such proceedings as are here initiated, and he must

pay her share over to the plaintiff. This conclusion, it is contended by the appellant, is wrong, if the defendant is not justly indebted to the Santa Clara Mining Association, or if any such state of facts exists, as in equity and good conscience that association should not hold the defendant liable as trespasser; and it is urged that he should be held as one who, in the proper care of the other property of the association legally in his custody, was compelled to preserve that part of which he did have charge by the use of that of which he did not have control; thus benefiting the property of the Santa Clara Mining Association, increasing its value, and rendering it the more capable of paying the mortgage debts, and thus making it the more probable that the unsecured debts should be paid.

We think that the facts shown by the record are that, at the time of the first appointment of the receiver, all the mining property of the Santa Clara Mining Association was a part of the same system of operations; that it was all held as the mining ground, for the one common purpose of extracting quicksilver ore; that whatever quicksilver was extracted from one portion of the ground was used, indiscriminately, when sold and converted into money, for the common benefit of the whole property; that the association, being a party to these foreclosure proceedings, knew when the receiver was appointed that he would take charge of the whole property; that it was in such a condition that everything which could be gotten out of it, and every part of it, would be needed to preserve the property, and aid in paying its secured indebtedness; and that the receiver would use the whole of this property for that purpose. And, knowing all this, the mining corporation permitted him to take possession of all the property, to use it indiscriminately, to borrow money under the orders of the court, to carry on the whole mining industry, to work every part of it for the common benefit of the whole, never once protesting or objecting, but, apparently, willingly allowing all the benefit which accrued by virtue of the acts of the receiver to go to the enhancing of the value of its property, and standing by, not only without objection to, but, to all intents and purposes, approving his acts; and, so far as this record shows, the corporation is still satisfied with and acquiesces in the acts of the receiver with reference to its whole property. Those

who complain are persons to whom the mining association is indebted, and who cannot get their money unless they can show that, as a trespasser, the defendant did acts which the corporation considered a trespass, and not a benefit. The defendant, as receiver, has yet to repay many thousands of dollars of borrowed money used to develop and care for the property of the mining corporation, and borrowed under the authority of the court; yet the plaintiff claims that the proceeds of the quicksilver which the defendant extracted from one portion of the mine should go to her as the representative of the corporation whose property had been trespassed upon, and that the debts which he contracted under orders of the court, unobjected to by the mining corporation, and used to render more valuable its whole property, shall go unpaid from the proceeds of the corporation's property which this borrowed money assisted to bring into existence. The defendant has benefited the mining corporation by all his acts. That corporation was a party to the proceedings, stood by and allowed him, without any sort of check or sign or disapproval, to develop its property, make it more valuable, more capable of paying its creditors, and yet seems to affirm his acts, and makes no claim against him; but its creditors who are not secured claim that May is a willful trespasser, and should be made to hand over to them money, which they claim he wrongfully has, belonging to the mining corporation. That corporation was interested to have the property included in the McCalmont or first mortgage increased in value so as to go further toward the payment of the mortgage debt, by the preservation of such property by May; and, if he used the ore taken out of station 8 to do this, and borrowed money, and applied it to the working of the whole property, thus benefiting the mining corporation, and it sat by, and did not object to receive such benefit, but took it in silence, we cannot see that it can now hold the acts of May in the premises those of a trespasser: Wise v. Walker, 81 Cal. 11–13, 20 Pac. 293, and cases cited.

But, while this is true, there is another reason why May should not be held a trespasser, and responsible to the mining corporation. The second mortgage, or deed in trust, the one given to the Farmers' Loan and Trust Company of New York, which was a party defendant to the suit of foreclosure, and

then, by intervention and a cross-complaint, became a voluntary party thereto, was, as we think, a mortgage on all the interest in the disputed mine which the Santa Clara Mining Association had. The specific description of property set out in that conveyance did not carry any interest in the ground called "Station No. 8," from whence the quicksilver in controversy was taken, but that which follows did. It is in this language. After conveying the property described in the first or McCalmont mortgage, it reads: "Together with all and singular the property thereunto attached or belonging, situated in Santa Clara county, in the state of California, or wherever the same may be, and all the lands, tenements, mines, minerals, real and personal property, rights, privileges, and appurtenances, of every kind whatsoever, of or belonging to the said party hereto of the first part, in Santa Clara county aforesaid." "A deed is evidentiary and may be helped out by other evidence": De Sepulveda v. Baugh, 74 Cal. 468–472, 5 Am. St. Rep. 455, 16 Pac. 223. As this deed conveyed all the lands, etc., that belonged in any way to the mining corporation in Santa Clara county, all that would be necessary to make the description certain would be to show dehors the deed, by proper evidence, that the mining ground in controversy belonged at that time to the corporation: Pettigrew v. Dobbelaar, 63 Cal. 397. This was sufficiently shown; and a court had jurisdiction of the property by reason of the second mortgage or deed in trust, and the mortgagor being a party, as well as the mining corporation, to the action of foreclosure wherein the receiver was appointed. The Santa Clara Mining Association was a party to the whole proceedings. It was competent, therefore, for the court, sitting as an equitable tribunal, to settle all matters of accounting in the foreclosure suit; to adjust the whole matter, even if it involves items accruing after the commencement of the action. Station 8, from which the ore in controversy was taken, belonged to the association at the time the trust deed was executed and delivered—as much so as it ever did after that time. If the association had no title at the time the trust deed was given, it had none at the time the ore was taken out. But it did have possession and control of the land, under a claim of ownership recognized in the neighborhood; and in whatever way the land

belonged to it, or by what right, that right was carried by the deed in trust.

Upon the whole case, we do not think the court warranted in finding that May was a trespasser upon the property of the Santa Clara Mining Association, or that he is indebted to it in any sum whatever. Wherefore, we advise that the order be reversed.

We concur: Belcher, C. C.; Gibson, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order is reversed.

BEATTY, C. J.—Justice Thornton is assigned to department 1 for the purpose of considering this case.